Statham v. The State of Georgia

W. R. STATHAM, plaintiff in error, v. THE STATE OF GEORGIA, defendant in error.

(Atlanta, January Term, 1871.)

1. SETTLEMENT BETWEEN PROSECUTOR AND DEFENDANT—INDICTMENT FOR OBSTRUCTING LEGAL PROCESS—NOLLE PROSEQUI.—An indictment for obstructing legal process is not one of the cases which, under section 4609 of the Revised Code, may be settled between the prosecutor and the defendant, nor is it within the power of the Solicitor General, after the supposed settlement of such a case, to enter a nolle prosequi of it by handing a paper to that effect to the Clerk. A nolle prosequi, as it must go upon the minutes of the Court, must be made in the presence and with the knowledge of the Judge; and in cases not authorized by law to be settled between the parties, must be by consent of the Court.

2. SOLICITOR GENERAL PRO TEM—APPOINTMENT—NONRESIDENT—DISCRETION OF COURT — APPELLATE PRACTICE.—The propriety of appointing a Solicitor General pro tem., in consequence of the interest of the Solicitor General in the case, is largely in the discretion of the Court, and this Court will not interfere unless that discretion is abused; and the Court may appoint as Solicitor General pro tem. a practicing lawyer of the Circuit who does not reside therein.

3. EVIDENCE—LEADING QUESTIONS—DISCRETION OF COURT.*—It is in the discretion of the Court to permit leading ques-

*EVIDENCE—LEADING QUESTIONS — DISCRETION OF COURT.—"Leading questions are generally allowed in cross examinations, and only in these; but the court may exericse a discretion in granting the right to the party calling the witness. and in refusing it to the opposite party, when, from the conduct of the witness, or other reason, justice requires it. Code, § 3865. In Hayden v. State, 20 Ga. 155, after stating the general rule as above, the judge delivering the

tions to be put to a witness who shows a reluctance to answer the questions of the party who calls him.

4. CHARGE OF COURT—ERRONEOUS—VERDICT RIGHT UNDER PROOF.—When a Judge, in his charge to the jury in an indictment for obstructing legal process, told the jury that, if the defendant acted against or resisted the sheriff, either by physical force or by argument, he was guilty, and the proof clearly showed that he did resist by physical force:

*Held*, That though the charge was erroneous in stating that the resistance might be by argument, yet, as the verdict was clearly right under the proof, a new trial will not be granted.

508        *Obstructing legal process.   Criminal law and practice.
        Before Judge Harrell.   Webster Superior Court.   September Term, 1870.

Statham was indicted for obstructing legal process. The indictment does not appear in the record, nor does the order appointing a Solicitor pro tem. It is said that the Solicitor General, S. Wise Parker, drew the indictment and subsequently undertook to nol. pros. it, and that afterwards a Solicitor pro tem. was appointed.

When the case came on for trial, defendant's counsel moved to quash the indictment, stating that Parker, Solicitor General, had nol. prossed the bill, but that the order had not been entered upon the minuts of the Court, because the presiding Judge had ordered the Clerk not to put it upon the minutes. And they proposed to have said order entered nunc pro tunc.   In support of this motion, Parker testified that he is the Solicitor General of said Circuit, and as such entered a nol. pros. in said case, and handed to the Clerk the following:

"The State v. W. R. Statham.

"Obstructing legal process.   At the instance of the prosecutor, I enter a nolle prosequi in the above stated case.   September Term, 1870.           S. W. Parker, Sol. General."

He further testified, that he received all the Clerk's and Sheriff's costs at March Term, 1870, gave defendant his costs, and intended to enter the nol. pros. then, but did not; that "nol. prossed" was written by him on the bill, but not till after Colonel Goode was appointed Solicitor pro tem. to represent the State in said case.   The Clerk testified that, on

opinion, declared that 'the case in which this court would touch the superior court's judgments, allowing or not allowing a leading question to be asked, would be an extreme one.' Leading questions may be put to a witness, who shows reluctance to answer, by the party calling him. (Statham *v.* State,) 41 Ga. 507 (3rd headnote). This is unquestioned, where the witness called is not a party to the suit; but it is urged that the rule is inapplicable, where the opposite party is made a witness. This point seems to have been ruled the other way by this court in (Burrus *v.* Kyle,) 56 Ga. 24, 27, where it was held that the discretion of the court in refusing to allow leading questions on cross examination would not be controlled unless abused, especially where the witness was one of the parties to the suit in whose interest the questions were propounded." Cade *v.* Hatcher, 72 Ga. 363.

the first day of the present term, Parker handed him the paper quoted above, but that he did not enter it upon the minutes, because the Judge had ordered him not to enter it, "unless it was signed by the presiding Judge." It was also shown that $34 35, as costs, were paid to Parker, and his receipt for it stated that he would enter a "settlement" in said cause.

The Court refused to allow the nol. pros. to be entered *upon the minutes—said the bill was not nol. prossed, nor was the case settled, because he had not consented to either.

Defendant's counsel then objected to the appointment of Goode as Solicitor pro tem., because he did not reside in the circuit. Goode admitted that he did not reside in the circuit, but stated that he practiced in it regularly. The Court held Goode a competent Solicitor pro tem.

As Goode was about to proceed with the case, defendant's counsel objected, saying, that what he called the indictment was but a presentment of the Grand Jury, and offered to prove by Parker that, in "drawing the bill," he put the name of John T. Wharton on it, but could not swear that Wharton knew it, or authorized it, or that he gave his consent that it should be done; that he used Wharton's name as prosecutor, because Wharton was the officer whom defendant was charged with having resisted; that at March Term he consented to settle the case at the request of Wharton, Wharton then knowing that his name was "on the bill" as prosecutor and making no objection thereto. Goode asked time to prepare an indictment, but the Court held said paper to be an indictment and ordered the cause to proceed. Defendant's counsel proposed then to prove by Wharton, that his name was put upon the indictment, as prosecutor, without his knowledge, consent, or authority, but the Court would not hear this. The trial proceeded.

Wharton was examined as a witness. During his examination, Goode asked him: "When you went to arrest defendant, did he not resist the arrest?" This question was objected to as leading. The Court, thinking Wharton reluctant to testify, overruled the objection.

Wharton then testified that he had a bench warrant against Statham for assault and battery, went to Statham and told him he must give bond or go to jail; Statham said he would go to jail, walked a few steps with Wharton and then stopped and said, he would not give bond, and that, before he would to to jail, he would cut Wharton's throat from ear to ear. Wharton went into the Court-house, and when he came out again, Statham "was still striking around." Wharton summoned *some men and arrested him by force, caught hold of Statham's hand, in which he had a stick, bent it under his (Wharton's) arm, and called the others to help. Statham struggled, and they "closed up."

He refused to go to jail or give security; did not go to jail willingly—he was "toted up." Wharton said Statham did not resist at first, and that he had tried to get bail for him, to keep him from getting into further difficulty; that he kept jerking back, but they put him in jail.

Goode then read in evidence the indictment for assault and battery; a bench-warrant issued under it, and a bond given by Statham for his appearance. They are in the usual form. The bench-warrant and bond are dated the 14th of September, 1869, and on the bench-warrant was written—

"Arrested the defendant and taken bond in conformity to law, September 14th, 1869.

Jas. T. Wharton, Sheriff."

The evidence being closed and argument had, the Court charged the jury, that "if defendant acted against, resisted, either by physical means, by argument or other means, or placed himself in front or acted against the sheriff; or if he withstood, strove against, and endeavored to counteract, defeat or frustrate the sheriff, or stopped, or impeded, or retarded, or interrupted the sheriff, he is guilty."

The jury found the defendant guilty. His counsel moved for a new trial, upon the grounds that the Court erred in refusing to quash said indictment, or have the nol. pros. entered; in holding Goode a competent Solicitor, pro tem.; in allowing said leading question, and in charging as aforesaid. The new trial was refused and error is assigned on each of said grounds.

Hawkins & Burke; Thomas H. Pickett, for plaintiff in error.

C. T. Goode, Solicitor, pro tem., for the State, cited Irwin's Code, secs. 415, 4609, 4610.

511     *McCAY, J.

1. Very clearly the offense of obstructing legal process is not an offense against the property or person, nor is it punishable only by fine or imprisonment. It must come within this category to be capable of being settled by the prosecutor and the defendant: Revised Code, 4609, 4610. The very essence of this offense is its insult to the majesty of law. The man who executes the process is, it is true, an individual, but the wrong that is done is the injury to public justice. This was not, therefore, such a case as could be settled. Nor was the paper handed by the Solicitor General to the Clerk an entry of nolle prosequi. Such a proceeding is to be coram judice. It must go on the minutes of the Court, and must transpire, at least, with the cognizance of the Court. The minutes are the record of the acts of the Court, and no entry can be made thereon, except with his consent. This the Solicitor General did not ask. The nol. pros. was not, therefore, a complete act, when the

Court appointed a Solicitor General, pro tem. Nor is it, in our judgment, within the power of the Solicitor General to nol. pros. an indictment at his option without the approbation of the Court.

By the Act of 1870 it is expressly provided to the contrary. But even before that Act, although we are aware it has often been done, we know of no authority for it. The State is the party, and the Solicitor General only the agent to carry on the proceeding. He has not, and ought not to have unlimited power of prosecution, and great evils may result and have resulted from placing such a power in the hands of one man, whose acts are not done openly and with reasons publicly declared.

Both indictments and presentments are the solemn acts of the Grand Jury, on evidence sworn before them, and it ought not to be in the power of the Solicitor General, without consultation with the Court, to nol. pros. them without a trial. Such has never been the practice, as we learn from some of our oldest practioners, in most of the circuits. It is due to the public, and to the Grand Jury, that such action shall be *with the consent of the Court. The Code, section 415, permits him to do this on terms prescribed by law. It is not, therefore, an authority dependent upon his own will. If the case be not one permitted by law to be settled, he ought not to a nol. pros. it at all, unless there be good reasons for it. And he should state them in open Court to the Judge, and act under his advice and direction, that he and the country and the accused may know why the charge has been abandoned.

2. Section 419 of the Code authorizes the Judge, if the Solicitor General is absent, indisposed or disqualified from interest or relationship to engage in a prosecution, to appoint "a competent attorney of the circuit" in his place. Necessarily such an appointment, based as it is upon facts of which it is the Judge's duty to inform himself, must be the result of his sound judgment upon the facts. The law casts the duty upon him, and this Court will not interfere with that duty, unless his discretion be abused. Indeed, we are not sure that his act in appointing a Solicitor General is the subject matter of review in this Court, on an exception by a suitor. When the appointment is made he is an officer de facto for any official purpose, and his acts are legal, even if there be some error in the appointment. The same thing may be said of the other branch of this exception. At most the non-residence of Mr. Goode in the circuit, is a disqualification, and by section 120 of the Code, it is assumed, as a general rule, that the acts of such an officer are good. But we think as Mr. Goode was a practicing lawyer of the circuit, the spirit of the law was complied with.

3. We think the charge of the Court, that the prisoner was guilty if he resisted by argument, was too strong. It can

hardly be said, fairly, to be resisting or opposing an officer to argue with him, unless that argument becomes violent so as to amount to something calculated to force the officer to desist.

But we will not, for this error, disturb the verdict. The evidence of violence was conclusive, and the charge of the Judge upon this point was immaterial. It could not have *misled the. jury, as the evidence was very strong of absolute force. This offense is one which the Courts ought to be sure to punish when it is, in fact, committed. The individual who is in possession of the office may excuse it, but the violated majesty of the law, which has no friends, which does not forgive, and which looks to general principles and to public policy, demands that offenses of this character shall meet their proper reward.