**THIRD DIVISION
MILLER, P. J.,
MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 1, 2016**

# In the Court of Appeals of Georgia

A16A0256. THE STATE v. MANTOOTH.

MCMILLIAN, Judge.

In this interlocutory appeal, we are asked to consider whether a criminal defendant has standing to object to a prosecuting attorney's decision to recuse himself after the prosecutor has determined that he has an actual or potential conflict of interest in the case. For the reasons set forth below, we answer in the negative and reverse the trial court's order vacating the recusal.

We review this issue of law de novo. See *Tisdale v. City of Cumming*, 326 Ga. App. 19, 20 (755 SE2d 833) (2014). Following her arrest in February 2013, Donna Mantooth was charged with DUI per se (OCGA § 40-6-391 (a) (5)) and an open container violation (OCGA § 40-6-253). Because of Mantooth's relationship to a member of the Cobb County Solicitor-General's staff, the Cobb County Solicitor-

General (the "Solicitor-General") recused himself and notified the Attorney General of Georgia, pursuant to OCGA § 15-18-65, of his office's conflict of interest in this case. The Attorney General then appointed the DeKalb County Solicitor-General to act as a solicitor-general pro tempore in the case against Mantooth. More than two years later, Mantooth moved to vacate the Solicitor-General's recusal, arguing that there was no actual conflict of interest and that he had recused himself without a hearing or the defendant's consent. Following a hearing, the trial court granted Mantooth's motion and also granted the State a certificate of immediate review. We granted the State's application for interlocutory review,[1] and this appeal followed.

1. In its first enumeration of error, the State asserts that the trial court erred in granting Mantooth's motion to vacate the recusal because a criminal defendant does not have standing to object to the recusal of a solicitor-general.

We turn first to the relevant legal framework. OCGA § 15-18-65 (a) provides:

When a solicitor-general's office is disqualified from interest or relationship to engage in the prosecution of a particular case or cases, such solicitor-general shall notify the Attorney General of the disqualification. Upon receipt of such notification, the Attorney General

---

[1] We note that a joint amicus curiae brief has been filed by the Prosecuting Attorneys' Council of Georgia, the District Attorneys' Association of Georgia, and the Georgia Association of Solicitors-General.

2

shall request the services of and thereafter appoint a solicitor-general, a district attorney, a retired prosecuting attorney as provided in Code Section 15-18-30, or other competent attorney to act in place of the solicitor-general, or may designate an attorney from the Department of Law. The appointment of the solicitor-general pro tempore shall specify in writing the name of the case or cases to which such appointment shall apply.[2]

The Georgia Rules of Professional Conduct make clear that it is the duty of the individual attorney to determine whether a conflict of interest exists, and if so, whether to decline representation. Rule 1.7 (a) provides:

A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client, except as permitted in (b).

Comment 1 to Rule 1.7 explains that "[l]oyalty and independent judgment are essential elements in the lawyer's relationship to a client. If an impermissible conflict of interest exists before representation is undertaken the representation should be

---

[2] This statute served as the model for the 2002 revision of OCGA § 15-18-5 providing for the recusal or disqualification of district attorneys. See Ga. L. 2002, p. 1211, § 1 (SB 276).

declined."[3] And our Supreme Court has reiterated that "the primary responsibility for resolving questions of conflict of interest" rests with the lawyer undertaking the representation. *Bernocchi v. Forcucci*, 279 Ga. 460, 463 (2) (614 SE2d 775) (2005) (relying on Comment 15 to Rule 1.7).[4]

Mantooth argues, nonetheless, that she has standing to challenge the order based on the State's alleged failure to prove any legal basis for the recusal and further attempts to distinguish her case from those relied upon by the State that involved a "legitimate conflict of interest." However, pretermitting whether the State can – or is even required to – prove that the Solicitor-General had a "legitimate" conflict of interest, Mantooth has shown us no legal authority supporting the proposition that a criminal defendant has standing to object to a prosecuting attorney's voluntary recusal. Indeed, Georgia law dictates otherwise. This Court has specifically held that

---

[3] In addition, a solicitor-general is required to swear an oath that he "will well, faithfully, and impartially and without fear, favor, or affection discharge [his] duties as solicitor-general." OCGA § 15-18-61.

[4] We note that the Supreme Court also held that opposing counsel may raise the question "where the conflict is such as clearly to call into question the fair or efficient administration of justice." (Citation and punctuation omitted.) *Bernocchi*, 279 Ga. at 463 (2) (cautioning that such objections should be viewed with caution as they can be misused for purposes of harassment). However, we do not read this holding to include the reverse, i.e., that a party may challenge opposing counsel's determination that a conflict does exist, and decline to extend the Supreme Court's holding here.

a defendant "does not have a substantive right to have his case tried by a specific prosecutor so as to make notice necessary in order to oppose the [solicitor-general]'s disqualification." *Nel v. State*, 252 Ga. App. 761, 762 (1) (557 SE2d 44) (2001). And we are aware of no other jurisdiction that permits a criminal defendant to choose his or her prosecutor. See *Gonzales v. Rapelje*, No. 06-CV-10191, 2015 U.S. Dist. LEXIS 44524 at *14-15 (E.D. Mich. April 6, 2015) ("Court is aware of no Supreme Court (or, for that matter, any) precedent establishing that a defendant's right to counsel of choice extends to the right to choose a prosecutor.").

Mantooth further argues that, even if her relationship to an employee presented a conflict, the Solicitor-General should have imposed an ethical screen around the employee rather than voluntarily recuse his entire office. However, that would require the Solicitor-General to remain in the difficult position of having to zealously advocate for the conviction of the family member of an employee or face accusations of showing inappropriate favoritism. While implementing proper screening measures around a non-lawyer may be useful in preventing the improper sharing of confidential information,[5] we believe the determination of whether screening measures would be sufficient in this case or whether recusal of the entire office is necessary is best left

---

[5] See *Hodge v. URFA-Sexton, LP*, 295 Ga. 136, 140 (1) (758 SE2d 314) (2014).

to the individual prosecuting attorney. Under the circumstances presented in this case, we will not second guess the Solicitor-General's voluntary recusal.[6] See *Wilson v. State*, 257 Ga. 352, 353 (359 SE2d 661) (1987) (counsel "is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial") (citation and punctuation omitted). Because Mantooth does not have the right to challenge the Solicitor-General's voluntary recusal, the trial court's order granting her motion to vacate must be reversed.

2. Alternatively, the State also asserts that the trial court lacked legal authority to vacate the Attorney General's administrative appointment of a solicitor-general pro tempore following the voluntary recusal of the prosecutor's office pursuant to OCGA § 15-18-65 (a). We agree.

In addressing this enumeration, it is helpful to examine the prior iterations of the relevant statutory framework.[7] Prior to 1996, the Official Code of Georgia Annotated did not specifically address the duties, powers, or responsibilities of the

---

[6] We also express no opinion as to the reverse situation – whether a screening measure would have been sufficient if the Solicitor-General had elected not to recuse.

[7] See OCGA § 1-3-1 (a) ("In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy."); *Evans v. State*, 334 Ga. App. 104, 106 (778 SE2d 360) (2015).

6

State's chief prosecuting attorney in State Courts, then known as "solicitors." Because there was "no specific statutory provision for disqualifying a state court solicitor and appointing a substitute to prosecute in his place," courts found it "instructive to look to the statutory rules applying to district attorneys." *State v. Evans*, 187 Ga. App. 649, 651 (3) (371 SE2d 432) (1988), overruled on other grounds, *State v. Smith*, 268 Ga. 75 (485 SE2d 491) (1997). Thus, relying on former OCGA § 15-18-5 (a), a presiding judge had the authority to appoint a temporary solicitor when the solicitor was absent, indisposed, or disqualified.[8] See *Cramer v. Spalding County*, 261 Ga. 570, 574 (4) (409 SE2d 30) (1991). And the trial judge had the authority to disqualify the prosecuting attorney, although that authority was not

---

[8] Former OCGA § 15-18-5 provided, in part:

(a) When a district attorney is absent, indisposed, or is disqualified from interest or relationship to engage in a prosecution, the presiding judge, as the emergency, in his discretion, requires, may:

(1) Appoint a competent attorney of the circuit to act in his place;
(2) Command the services of a district attorney of any other accessible circuit; or
(3) Make a requisition to the Governor for the service of the Attorney General.

7

unbounded. See, e.g., *State v. Davis*, 159 Ga. App. 537, 538-39 (2) (284 SE2d 51) (1981) (trial court erred in disqualifying the district attorney for moving to nol-pros the indictment).

Effective July 1, 1996, the General Assembly comprehensively revised the laws regarding the office of state court solicitor, renaming the office that of "solicitor-general."[9] See *State v. Rish*, 222 Ga. App. 729, 731 (1), n.3 (476 SE2d 50) (1996); OCGA § 15-18-60 et seq. Pertinent to this case, one of the changes enacted by the General Assembly was the adoption of a new process for appointing a solicitor-general pro tempore after a voluntary recusal. See OCGA § 15-18-65 (a). And after the 2002 revisions to OCGA § 15-18-5, to track the language of OCGA § 15-18-65, the only mechanism for appointing either a substitute district attorney or solicitor-general after a voluntary recusal is that contained in those statutes, i.e., the prosecuting attorney must notify the Attorney General of the disqualification, who is the only person then authorized to appoint a substitute prosecuting attorney pro tempore. Thus, following the General Assembly's comprehensive revisions, the trial court no longer enjoys the same authority it once did in disqualifying and appointing substitute prosecuting attorneys.

_____

[9] See Ga. L. 1996, p. 748, 749 § 2.

Although subsection (d) of OCGA § 15-18-65 recognizes that trial courts retain the inherent authority to disqualify an attorney who is legally disqualified,[10] they no longer have the same discretion to do so and must "specify the legal basis of such order" which is then subject to interlocutory appellate review.[11] Tellingly, there is no similar language contained in subsection (a) of this statute granting trial courts any authority to intervene in the voluntary recusal and subsequent appointment of a substitute solicitor-general through the Attorney General's office. We also note that, under the plain language of OCGA § 15-18-65 (a), neither the solicitor-general nor the Attorney General is required to provide a "legal basis" for the disqualification of a solicitor-general.

---

[10] See *Bernocchi*, 279 Ga. at 463 (2) (trial court may sua sponte raise the question of a conflict of interest when it appears the attorney has neglected his responsibility to resolve such questions).

[11] OCGA § 15-18-65 (d) provides:

Any order entered by a court disqualifying a solicitor-general's office from engaging in the prosecution shall specify the legal basis of such order. The solicitor-general may, on behalf of the state and prior to the defendant in a criminal case being put in jeopardy, apply for a certificate of immediate review as provided in Code Section 5-7-2, and such order shall be subject to appellate review as provided by Chapter 7 of Title 5.

Accordingly, because the trial court lacks authority to vacate the Attorney General's appointment of a prosecuting attorney pro tempore, the trial court's order granting Mantooth's motion to vacate the recusal must be reversed on this ground as well.[12] See *In re Tidwell*, 279 Ga. App. 734, 741 (3) (632 SE2d 690) (2006) (trial court's appointment of substitute prosecuting attorney was in error).

3. Because we reverse the trial court's order for the reasons set forth in Divisions 1 and 2, we need not address the State's remaining enumerations of error.

*Judgment reversed. Miller, P. J., and McFadden, J., concur.*

---

[12] We reject Mantooth's contention that unlimited voluntary recusals by a prosecuting attorney would allow prosecutors to pick and choose who their offices elect to prosecute. Other remedies exist to address a public official, such as a district attorney or solicitor-general, who fails to perform the duties of his or her office.